**Affirm and Opinion Filed August 30, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00901-CR**

**PAUL GARY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-2016883-S**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Garcia, and Kennedy
Opinion by Justice Pedersen, III

A jury found appellant Paul Gary guilty of murder and assessed his punishment at twenty years' confinement. In this Court, appellant argues that the trial court (1) erroneously admitted evidence proffered as a dying declaration, and (2) violated his common law right to allocution. We affirm the trial court's judgment.

### Background

Dante Humphries was stabbed in the back when he got off an arriving Dallas Area Rapid Transit (DART) train at the St. Paul station in downtown Dallas. A witness to the stabbing flagged down Dallas Police Sergeant Shannon Browning and

led him to Humphries. Browning testified that Humphries was lying face down on the ground; he was moving slightly and moaning. A knife blade was visible in his back. Browning discerned that Humphries needed immediate medical attention, so he called over his radio for both medical and additional police assistance, and then he waited for the paramedics to arrive.

While Browning was taking care of Humphries, his partner Officer Melva Jackson followed a trail of blood from Humphries to the other side of the platform, where she encountered appellant. He was wearing a white hat and a dark jacket, and he was sitting on the stairs, holding a knife handle. Jackson drew her gun and told appellant to drop the handle; he complied. When Browning saw that Jackson had drawn her weapon, he walked over, handcuffed appellant, and took him to a police car.

Humphries was still alive when he was taken from the scene by ambulance, but he died shortly after arriving at the hospital. The medical examiner testified that his death was caused by the stab wound to his back.

## Discussion

Appellant raises two issues on appeal. We address them in turn.

*Dying Declaration*

In his first issue, appellant argues that the trial court committed reversible error by admitting Browning's testimony that was hearsay and incorrectly proffered as a dying declaration. Hearsay is not admissible unless it falls within a prescribed statutory or rule-based exception. TEX. R. EVID. 802. The rules of evidence provide such an exception for a "statement [made] under the belief of imminent death," or what is frequently referred to as a dying declaration. TEX. R. EVID. 804(b)(2). The rule permits "[a] statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances." *Id.* We review a trial court's decision to admit evidence for an abuse of discretion. *Gardner v. State*, 306 S.W.3d 274, 291 (Tex. Crim. App. 2009) (trial judge has great discretion in deciding whether statement qualifies as dying declaration).

Following a hearing on appellant's objection, the trial court permitted specific testimony from Sergeant Browning concerning his interaction with Humphries. Browning explained that Humphries was not able to speak and communicated with "moans and gestures." Browning related that he asked Humphries more than once who had stabbed him but Humphries could not answer him. Then the following exchange took place:

> Q. [The Prosecutor]: Did you ask him, uh, who stabbed him in reference to a particular person or a description?
>
> A. [Browning]: Yes, I asked him if he could identify the individual or what the individual was wearing.

Q. Okay. Could he answer you?

A. No, ma'am.

Q. Uh, did you get more specific in your question?

A. I asked if the gentleman had a white hat on, and had a black jacket, and he motioned with his head in an up and down movement.

Q. And you're also gesturing with your head in [a] nod that is universally agreed upon as an affirmation or a yes?

A. Yes, ma'am.

Appellant does not dispute that the nod described by Browning was a "statement" for hearsay purposes. *See* TEX. R. EVID. 801(a) (statement may be nonverbal conduct). Nor does he dispute that the statement referred to the "cause or circumstances" of Humphries's death. TEX. R. EVID. 804(b)(2).

Appellant argues that the record does not contain sufficient evidence to establish that Humphries believed his death to be imminent when he nodded in response to Browning's question. *See id.* He relies on *Gardner v. State*, which addresses the history and legal requirements of the dying declaration exception. 306 S.W.3d 274, 289–90. On the contested issue here, *Gardner* states:

> Under the modern-day Rule 804(b)(2), the common-law requirement that "there was no hope of recovery" was abrogated, and the focus turned more to the severity of the injuries than the declarant's explicit words indicating knowledge of imminent death. *All that the rule requires is sufficient evidence, direct or circumstantial, that demonstrates that the declarant must have realized that he was at death's door at the time that he spoke.* It is both (1) the solemnity of the occasion—the speaker peering over the abyss into the eternal—which substitutes for the witness oath, and (2) the necessity principle—since the witness had died, there was a necessity for taking his only available trustworthy statements—that provide the underpinning for the doctrine.

*Id.* at 290–91 (footnoted citations omitted; emphasis added). Appellant argues there is no evidence that Humphries "must have realized" he was about to die, as *Gardner* requires.

The Court of Criminal Appeals stated in *Gardner* that to determine whether the victim knew death was imminent, the trial court could have relied on "her express words, her conduct, the severity of her wounds, the opinions of others stated to her, or any other relevant circumstances." *Id.* at 292.[1] In this case, when Humphries responded to Browning's question, he had collapsed after being stabbed in the back;

---

[1] The specific facts the court pointed to as relevant evidence were:

(1) The single bullet entered her right temple, went through her brain, and exited below her left ear. This was a mortal wound;

(2) Ms. Whitfield testified that Tammy's voice was very slurred and hard to understand;

(3) Tammy kept repeating that her head hurt and that she could not hear very well "because her ears were ringing from the gunshots";

(4) She said that her husband had shot her, there was blood everywhere, and she needed an ambulance;

(5) Before the phone disconnected, Ms. Whitfield heard what sounded like Tammy choking and vomiting;

(6) When the first deputy arrived, he found Tammy on the blood-soaked bed, trying to sit up; she appeared to be in shock and was bleeding badly from both the back and top right of her head;

(7) There was a trail of blood leading into the bathroom, around the toilet, and in the trash can;

(8) When the paramedics finally arrived, Tammy was "spitting up a lot of blood" and mumbling incomprehensibly;

(9) She was in a vegetative state and died at the hospital two days later.

*Id.* at 291–92.

the blade of the knife remained in his body; he was unable to speak; he moaned and moved the entire time Browning was with him; the wound was mortal; Humphries died from loss of blood within an hour of being stabbed.[2]

We conclude the trial court could have reasonably inferred from this evidence that Humphries realized he was "at death's door" when he responded to Browning. *See id.* The court did not abuse its discretion in admitting Browning's testimony as evidence of a dying declaration. We overrule appellant's first issue.

*Allocution*

In his second issue, appellant contends that the trial court violated his common law right to allocution; he asks for a new punishment hearing. The State contends that appellant did not preserve this complaint for our review. We agree.

"The term 'allocution' refers to a trial judge's asking a criminal defendant to speak in mitigation of the sentence to be imposed." *McDonald v. State*, No. 05-20-00892-CR, 2021 WL 5917506, at *2 (Tex. App.—Dallas Dec. 15, 2021, no pet.) (mem. op, not designated for publication). Appellant concedes that the trial court complied with Texas's statutory allocution requirement. Prior to sentencing appellant, the trial court asked his lawyer: "Counsel, is there any legal reason why sentence should not be, uh, observed?" Appellant's attorney responded: "No, Your Honor." *See* TEX. CODE CRIM. PROC. art. 42.07. Appellant did not request an

---

[2] Video evidence from the DART station was admitted at trial and indicated Humphries sustained the injury minutes before midnight; he was pronounced dead at 12:34 a.m.

opportunity to make a common-law allocution during the hearing, nor did he object to the trial court's failure to offer him that opportunity. To complain on appeal of the denial of the right of allocution, whether it is statutory or one claimed under the common law, a defendant must timely object. *See Gallegos-Perez v. State*, No. 05-16-00015-CR, 2016 WL 6519113, at \*2 (Tex. App.—Dallas Nov. 1, 2016, no pet.) (mem. op., not designated for publication). Because appellant did not do so, he has preserved nothing for our review.

We overrule appellant's second issue.

## Conclusion

We affirm the trial court's judgment.

220901f.u05
Do Not Publish
TEX. R. APP. P. 47

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PAUL GARY, Appellant

No. 05-22-00901-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F-2016883-S. Opinion delivered by Justice Pedersen, III. Justices Garcia and Kennedy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of August, 2023.